18-0840, 18-0895, and 18-1020, consolidating, Michael Johnson, et al. v. Exp U.S. Services, Inc, et al. Would the attorneys that are going to be arguing this case please step up and identify yourselves for the record. Good morning. Melissa Murphy-Petros for both of the defendants' appellants. Good morning. Good morning. I'm Michael Rassak on behalf of the plaintiffs' affiliates. All right. Each of you will have about 15 minutes to present oral arguments, and from that, Ms. Murphy-Petros, you may save out some time for rebuttals. Yes, I'll save five minutes. All right. You may proceed. Thank you. Good morning, Your Honors, and may it please the Court, Melissa Murphy-Petros on behalf of the defendants' appellants. The two most important factors in the forum nonconvenience analysis weigh strongly in favor of Kane County. On the private interest side, this Court has established that the penultimate private interest factor is the possibility of a jury view of the accident scene. But there couldn't be no view of this accident scene, is that correct? It's all removed as of now. We maintain that that's actually incorrect. Yes, the construction site is the construction project, excuse me, is complete. What caused the accident? Well, it depends. Our position, of course, is that what caused the accident is Mr. Nash's negligent driving. What about the fact that Plody and Express Rail Services both have principal offices in Chicago? That is a factor that the courts regularly have held is to be given little deference in the forum nonconvenience analysis. Doesn't it go to whether you're going to be terribly inconvenienced by trying a case in Cook County when your principal place of business is in Chicago? Again, the courts have held squarely that, you know, neither side can argue the other one's convenience. It is a factor to consider, but it's given little deference. Okay, so your factor that you want us to focus on is the fact that this accident occurred in Kane County, and the construction that was ongoing at that time no longer exists. So exactly what is it that you think the jury could go out to this scene and see? The jury could see several things. First of all, the idea of what Nash was able to see. So you would have to time it exactly that the sun would be setting or rising at the exact same level that Mr. Nash would have been driving into at the time? I think it doesn't need to necessarily be timed exactly, but certainly a sunny day would do the trick. Why couldn't the jury actually do that in this case? I think the jury could do that. Even if the case is here? I think... What would prohibit that? Nothing would prohibit it, but the court looks to...  When was the last time that you read a jury decision, though, where that actually was done? Well, we would have to look, I suppose, at cases that have been tried. I don't know, but the courts here... Well, as a practicing lawyer, have you been involved in a case in the last 10 or 15 years where that actually was done? Personally, I have not, but that's my personal experience, and of course... There is not a judge permitting a Cook County jury to actually view the scene. There is not, but then we look to convenience, which, of course, the Cook County court is approximately 40 miles from the accident scene, as opposed to 14 miles between the accident scene and the Kane County court. But there's nothing that would ever preclude a court sitting in Cook County from actually allowing this viewing. That's correct. And the circuit court here, however, did not evaluate that factor correctly, because the circuit court here said it's not necessary to have a jury view. That's not the standard. It's whether or not it's possible. Didn't the court also say, though, I think when Justice Berkey asked one of the first questions, was that didn't the court indicate that the scene had actually changed? The construction scene had changed. That's part of the reasoning as well? That's part of the reasoning, but again, as we set out in our brief, the circuit court did not consider the allegations with respect to Nash and his conduct, the sun, his sight lines from the left lane. Also, geography. With respect to the signage, William Schaefer testified that some signs on the left lane could not be placed because there wasn't enough room on the shoulder or the bridge. Those things are still there, and those would be contours and geography of the accident scene that could be very important for a jury to see. That's up to the trial judge. Here, the circuit judge said, absolutely, this is not necessary. That was an abuse of discretion. It's possible that a trial judge, for all these reasons, may want a jury to see this accident scene. Why is that an abuse of discretion? Just simply because he said that there wouldn't necessarily or there couldn't be a viewing? Yes. That's the decision for the trial judge to make. His job as the motion judge is to determine if it's possible. That decision is refuted because it doesn't matter what he said about that because they could always request to take the jury out to the scene. So for him to say, oh, no, you can't do that, well, that's not correct. But does that mean that everything he looked at for form and unconvenience is somehow throwing the baby out with the bathwater? Well, as you know, we maintain that. It's not binding on the trial court. But it was the incorrect approach for him to take in ruling on the form and nonconvenience motion. He should have looked at the possibility, not what he would have deemed to be a necessity, were he the trial judge. The second most important factor in the form and nonconvenience analysis on the public interest side, of course, is the location of the accident. And our Supreme Court has made very clear that no county has a greater interest in any litigation than that where the accident occurred. That is King County. You would like us to write a decision that would say that when your principal place of business is in cookout, that it's not convenient for you to have a trial in cookout. Yes, I would. And here's why. When you are looking at... Do you know of any such case? There are cases where... Tell me one. There are cases that we've cited in our brief. I'm sorry. I will look up names for you. A case where somebody's principal place of business was in cookout, and a court wrote that it wasn't convenient for them to have the case in cookout. We look at the convenience with respect to the litigation. Do you happen to have a case that ever said that? I believe we do. I'm sorry. The names aren't coming immediately to me. I won't look at my tables when I sit down. But, again, in evaluating the business conduct in plaintiff's chosen forum, the courts have historically said it's to be given little deference because that business conduct does not necessarily establish convenience with respect to what happened in this litigation. Are there? Oh, I'm sorry. Oh, I was about to say that we don't look at convenience in this broad manner. We look at the convenience and the factors with respect to this litigation. Are there multiple defendants here? There are. Yes. And isn't it a fact that there are multiple defendants that do not wish a transfer? No. Did they all argue for a transfer? They did not. Okay. But they did not object to a transfer either. Either the defendants below at the motion court either joined the motion or they did not object. The only objector was Nash who objected in his capacity as a plaintiff. Rule 187 is very clear. It says a party may move to dismiss for forum nonconvenience. It does not require all parties to do so. The fact that other defendants did not join the motion does not mean that they agree that Cook County is a convenient forum. That would be analogous to a reviewing court that denies a petition for leave to appeal. It certainly does not mean that the court approves of the circuit court's decision on the merits. It simply means not enough judges voted to grant review. Sometimes. Excuse me? Sometimes. Yes. But we certainly can't cite that denial as an affirmance, if you will, of the circuit court decision. So the fact that not all of the defendants participated in the motion is neither here nor there. No one objected. So you're saying that the two factors that the court had ruled incorrectly are not equating the ability to take this jury to view the scene. And what was the second? The sight of the accident. The sight of the accident. Yes. That absolutely controls. Is that what you're trying to say? On the public interest side, that is the Supreme Court has held that that is the most important factor on the public interest side. And here, the court found that that was kind of a neutral factor. And that certainly does not comply with the Supreme Court. Which case said that that's the most important factor? Washington v. Illinois Power Company. It is cited in our brief. But certainly that's not the only reason. As we discussed in our brief, there are other problems with the circuit court's analysis. The circuit court's reliance on the location of airports in Cook County, which was never argued below. And there was no evidence below that any plaintiffs would need to fly in. The affidavits that were presented by the plaintiff, by Plaintiffs Johnson and Rose, I should say. The 21 affidavits of various people saying it would or would not be convenient for them to testify in Cook or Kane County. Those are not sufficient affidavits. They simply have a name and a statement.  And a signature. There's no facts from any of those affidavits as to why Cook County would be more convenient or Kane County less convenient. It's established. The 5th District recently in Foster had held that affidavits like that are entitled to little if no weight in the foreign nonconvenience analysis because they don't have facts backing that up. Do you agree, though, that we're looking at this from the highest standard of review? Most deferential. Yes. Yes, we do. And although it seems that there are questions about what that standard means, it still is the standard that this Court has to look at in deciding this case. Yes. Yes, we do understand that. If you have no further questions, I'll save the rest of my time. Thank you. All right. Mr. Rasek. Good morning, Your Honors. As I said, Michael Rasek. I'm here on behalf of the plaintiff's half of the leaves. Stepping maybe just back a little bit, I just want to, the Court obviously is aware of it. We have a situation where a trial judge was faced with apparently a mountain of information from both sides, extensive motions, extensive counter motions, replies, filed the surveys, 15-page single-spaced decision in which the judge tried to examine all of the relevant factors, and the Elling and the Berry cases we cited both say that in itself becomes a factor in this Court's determination of whether that Court abused its discretion. When a Court goes to that length, I would think that you'd have to have a pretty clear situation. And turning simply to the two points that they addressed here this morning, the view of the scene, the Court's questions make me aware that the Court is aware of the arguments we made. As we explained in our brief, it is simply impossible to recreate this crash. If somebody wanted to, they could try, but it just simply cannot be done physically. And as to the suggestion that the location of the accident is the most important point, that's not what the Washington County case says. What does it say? I don't think it says that either. It does not. Tell me why. It's actually quoted in the reply brief. I believe it says something like, it is a point of interest. It's a point of strong interest, and obviously the location of the accident, I wouldn't say otherwise, it's always been something that the Court's looked at. And I think we've, even if it was the most important part of this appeal, as we've explained, and as the two defendants left in this case on appeal that apparently still object, they don't really rebut what we set out in our answer brief, which is a description of how this was not simply an auto accident like in Hale or Schuster. It's a very complex matter that involves how this roadway in Cook County was set up. All the testimony was that the decisions were made in Cook County, that the accident happened in the very smallest part of the project that was not in Cook County, and that just implicates Cook County to such an extent. If you look back at the Griffith case where the Court said simply a plane leaving Miggs and crashing into DuPage still had a connection to Cook County because Cook County had an interest in safety at its airport. Well, here Cook County has an interest in safety all the way from O'Hare out to wherever its county line is, and that brings this case within a situation where the location of the conduct is Cook County. Unless this Court has some further questions, we will rest on our brief for the remainder of our arguments. All right, thank you. Thank you. Rebuttal? Rebuttal? Just a few quick points. With respect to Washington v. Illinois Power Company, which is cited in both of our briefs, but the direct quote from the Supreme Court is, quote, that makes plain that the site of the accident is a critically important question. With respect to, counsel mentioned the complexity of the matter, and that is an important factor, and it implicates one of the other public interest factors in the test, which is the imposition of imposing jury duty on taxpayers, on residents of the county with very little connection to the accident. In this case, we have six passenger plaintiffs, 24 defendants, including Mr. Nash. Fact discovery has been ongoing during the pendency of this appeal. One hundred depositions have been taken. Was there testimony or some suggestion, though, that the construction had to do with certain things that were decided in Cook County? Plaintiff's argument is that there were project meetings in Cook County, and that the signage decision from the record as we have it was discussed at a meeting in Cook County. Of course, the signage decision was actually implemented in Kane County. But again, as I was saying, we still have 20 to 30 more fact depositions to go. The expert testimony in this case is going to be very long and very complex, the expert discovery, excuse me. The trial of this case could easily take six to eight weeks. That's an enormous burden, in our opinion, to impose on the taxpayers of Cook County, given the minimal connections between this case and Cook County. Doesn't that whole idea, though, that you have two defendants residing here, are you really saying that Cook County has no interest in decisions made by its residents? Corporations with principal places of business, can you really say that? Cook County has that interest, but again, we bring the foreign nonconvenience analysis, always has to come back to this accident. And this accident happened in Kane County, and involves only Wisconsin residents. So, yes, that's a factor the court should look at. Is it a controlling or dispositive factor? Absolutely not. We have to look at this accident. And here, there were no Cook County residents involved whatsoever. My final point, Justice Gordon, the cases that we have cited on the convenience and the business activities are at pages 29 through 30 of our brief. And that would be Sussman and Bruce v. Sherman Hospital. All right. Thank you. Thank you. The case was well-argued and well-briefed, and we will take it under advisement. And the court's going to stand in a short recess.